Simon, J.
delivered the opinion of the court.
On the 17th of November, 1830, the insolvents being indebted to J. Labadie, drew in his favor a bill of exchange, on Messrs. A. B. & W. Davis, of Rankin, Yazoo Oounty, Mississippi, in the following words: “ New Orleans, [523] 17th Nov., 1830, at two months from date, of this, my only bill of exchange, pay to Mr. J. Labadie or order the sum of eight hundred and five dollars two cents, for value received, which place to account as per advice of this; from (signed) J. Benoist liquidator of the house of Benoist & Blanchard. Messrs. A. B. & W. Davis, Rankin, Yazoo Oounty.” On the same day, a letter of advice was by them addressed to the said Davis, as follows: “ Messrs. A. B. & W. Davis, Rankin, Yazoo Oounty. New Orl’s, Nov. 17th, 1830 : Gentlemen, I have prevailed upon you this day in favor of Mr. J. Labadie for $805 2, in a bill of exchange on you of this date and payable at two months from date; if you pay it, it will be on account of the judgment I will certainly obtain against you for the amount you owe my house, at the first session of the district court of the United States at Natchez. Yours (signed) J. Benoist, liquidator of the house of Benoist & Blanchard.” The bill was neither accepted nor paid by the drawees, nor was any protest made or any notice given to the drawers of the dishonor of said bill.
On the 28th of February, 1831, Benoist <fc Blanchard sued their creditors, and filed a schedule of their affairs, in which J. Labadie is placed as one of their creditors, in these words: “ Jean Labadie, Nile. Orleans: noire mandat á son ordre sur A. B. & W. Da/ois, de Bcmlcin, du 17 Novembre, 1830, et payable a, dew mois, $805 2.” He appeared and voted at two different meetings of creditors, and no opposition appears by the process verbal of deliberation to have been either to his claim or to his vote.
A tableau of distribution having been filed by the syndic, (admitted to be the only one ever filed) in which the name of J. Labadie is not mentioned, the latter made opposition to its homologation, and claimed to be carried thereon as a creditor of the insolvents for $805, which is the amount of the said bill of exchange yet unpaid. This opposition was overruled by the lower court, and judgment having been rendered finally homologating the tableau of distribution filed by the syndic, the opponent appealed.
[524] In addition to the above facts, the record shows that on receiving the bill of exchange, in question, from Benoist & Blanchard, the opponent gave them the following receipt: “ J’ai regu de M. N. Benoist liquidataire de la maison Benoist & Blanchard la traite sur A. B. & W. Davis de Rankin, Yazoo county, Mississippi, de la somne de huit cent cinq piastres 2 sous en paiement de ce qu’ils me devaient; Je dit de ce que me devait la maison de Benoist & Blanchard, et je m’engage dans le cas oj la susdite traite ne serait ni acceptéo ni payée a son échéance a ne leur faire supporter aucuns des frais qui pour *687 raient avoir été faits, et 3. ne les considérer mes débiteurs que pour la susdite somme de §805 2 sous valeur, vingt Janvier 1831. N. Orleans, 17 Novembre, 1830, (signed) J. Lhbadie.” One of the witnesses, whose testimony comes up without any objection, testifies that the said bill was given in consideration of the sum of about §800, which the insolvent then owed to the opponent on an account of goods; that the reason why the bill was not protested for non-payment, was a certain agreement between the parties that in case of non-payment by the drawees, no costs should be made, and the said bill should be returned without protest. That at the time the same was returned unprotested, Benoist (Blanchard being absent) agreed to pay it, as it had been agreed on beforehand, and that the original of the receipt, the purport of which is that-Benoist & Blanchard gave a certain draft in payment to Labadie, which, if not paid by the drawees should be returned without costs, is in the handwriting of the witness. From the testimony of Mr. Derbigny, it appears that he had lately been iiiformed that there was in the hands of a lawyer in Mississippi a sum of fourteen or fifteen hundred dollars belonging to the insolvent estate of Benoist & Blanchard recovered from Davis & Co., on which there were some claims; the witness however does not positively know that in 1830, the house of Davis & Co. had in their hands any funds belonging to the insolvents, but he believes that at the date of the draft they had.
From the facts and circumstances disclosed by the evidence, we are [525] not able to say that the district judge did not err in overruling Labadie’s opposition and in not ordering him to be placed on the tableau of distribution as one of the creditors of the insolvents. The transaction under consideration seems to be one of a particular nature; it is clear that at the time Labadie took the bill of exchange in question, the drawers, far from being able to rely upon its being punctually paid, were on the contrary aware, or at least afraid, that it would be dishonored, and they accordingly took a receipt, in which they took care to provide against this contingency by freeing themselves from all costs, and by making the debt their own on the 20th of January, 1831, in case of non-payment of the bill at the time due; their letter of advice to tbe drawees shows also that the only fund out of which they could expect the satisfaction of the bill, was to proceed from a claim then in litigation, and on which they threaten to obtain judgment at the ensuing session of the United States district court, at Natchez. This was indeed a poor prospect for the collection of a bill of exchange, and almost equal to the drawees’ having no fund in their hands belonging to the drawers. Under such circumstances, even without any subsequent promise to pay the debt, on the part of the drawers, we doubt very much that their discharge or liability should depend upon a compliance with the strict rules which generally govern in eases of ordinary bilk of exchange, and we should be inclined to believe that the nature of this transaction takes it out of the general principles.
It has been, however, strenuously insisted that this bill having neither been accepted nor paid, should have been duly protested, and notice given to the drawers in order to fix their liability; but we have already shown that the drawers had every reason to expect that such would be the result, that they could not rely upon its being paid; and consequently on its being return *688 ed unprotested, one of them agreed to pmj it, in'compliance with their previous understanding with Labadie, and accordingly, the opponent was carried [626] on thevr Ulan for the amount of the bill, without any objections being made to his claim by any of the other creditors until the syndic thought proper. to exclude him from the mass. We feel no hesitation in saying that, had this controversy arisen between the opponent and the insolvents, the latter, under the promise and acknowledgment by them made in consequence of the previous circumstances, which show clearly that their liability was not to depend solely on their being duly notified of the dishonor of the bill, would have been bound to pay its amount. We are therefore of opinion that the tableau must be corrected, so as to include the opponent as one of the insolvents’ creditors ; and we come the more readily to this conclusion, that, from the testimony of Mr. Derbigny, there is a probability that the very same sum out of which the bill was to be paid, is or will be in the hands of the syndic to be distributed among the creditors.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoidedand reversed; that the tableau of distribution, filed by the syndic, be so corrected and amended as to include Jean Labadie as a creditor of the insolvents for the sum of $805 2, and that this case be remanded for this purpose; the costs of the opposition in the lower court and those in this court to be borne by the mass of creditors.